Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2914 | **DATE** | 4/14/2003 |
| **CASE TITLE** | Nona Farrar vs. George Yamin, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' motion to dismiss on all counts [26-1] is granted. Defendants' motion for sanctions [32-1] is denied. Judgment is entered in favor of the Defendants and against Plaintiff. This case is hereby dismissed with prejudice.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 1 5 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | SS |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | RO | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| NONA FARRAR, ) | |
| ) | |
| Plaintiff, ) | No. 02 C 2914 |
| ) | |
| v. ) | Judge Ruben Castillo |
| ) | |
| GEORGE YAMIN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Nona Farrar ("Farrar") filed this lawsuit in state court alleging a number of constitutional and state law violations by various defendants in their official and individual capacities, including the City of Chicago ("City"), several attorneys employed by the City, and unnamed members of the Chicago Police Department ("CPD"), Chicago Fire Department ("CFD") and the Office of Emergency Communications ("OEC"). The defendants subsequently removed the case to federal court pursuant to 28 U.S.C. § 1331. This matter is currently before the Court on Defendants' motions to dismiss Plaintiff's second amended complaint and to impose sanctions under 28 U.S.C. § 1927. Because we find that Farrar fails to state a claim against Defendants for which relief can be granted, Defendants' motion to dismiss is granted. (R. 26-1.) Defendants' motion to impose sanctions is denied. (R. 32-1.)

## RELEVANT FACTS

This lawsuit arises out of a previous suit Farrar filed against the City and various City employees alleging violations of her civil rights ("*Farrar I*"). (R. 21, Compl. ¶ 1.) *Farrar I* was ultimately dismissed pursuant to Federal Rule of Civil Procedure 27 after Farrar failed to comply with discovery requests. This dismissal was subsequently affirmed on appeal. *Farrar v. City of Chi.*, No. 02-2727, 2003 WL 1796007, at *2 (7th Cir. Mar. 27, 2003). In her current complaint

before this Court, Farrar alleges that Defendants engaged in misconduct during court-ordered discovery proceedings in *Farrar I.* While these allegations appear to form the bulk of her complaint, we do not address them in this opinion. Farrar had the opportunity to raise these claims in her appeal of the disposition of *Farrar I.* To the extent she failed to do so, she has forfeited her right to litigate them. *See, e.g., Hartmann v. Prudential Ins. Co. of Am.*, 9 F.3d 1207, 1212 (7th Cir. 1993).

The remaining allegations before us concern the destruction of five audiotapes Farrar requested from the OEC prior to filing *Farrar I.* The tapes recorded emergency calls made to the City's 911 emergency line; it was Farrar's intention to use the tapes as evidence in her suit. (*Id.* at ¶¶ 1-2.) Farrar sent a written request, apparently to the CFD, that five specific emergency call tapes be preserved; defendant Phil Stelnicki ("Stelnicki"), a CFD employee, subsequently confirmed that he directed the OEC to do so. (*Id.* at ¶¶ 2-3). Farrar requested the tapes within the thirty-day tape retention period set by the OEC; after thirty days, emergency call tapes are destroyed or reused by OEC staff. (*Id.* at ¶¶ 16-17.)

After requesting the tapes, Farrar learned that they either had been destroyed or erased. (*Id.* at ¶ 4.) During depositions of various city personnel in *Farrar I*, Farrar was unable to obtain information as to how or why the tapes had been destroyed. (*Id.* at ¶ 5.) She alleges in her current suit that Defendants either conspired together to prevent her from obtaining the information she needed from the tapes, or failed to stop the conspiracy, because she had successfully litigated against the City previously, and because she was "black, pro-se and female." (*Id.* at ¶¶ 100, 104, 109, 111.)

Farrar also alleges that unnamed Defendant City policymakers limited the emergency call retention tape period to thirty days specifically to frustrate plaintiffs and to avoid liability for the

actions of City personnel. (*Id.* at ¶¶ 26, 29.) In addition, she claims that the OEC's practice of requesting detailed information on emergency vehicles from individuals inquiring about specific emergency vehicle response runs is unreasonable and designed to frustrate potential plaintiffs. (*Id.* at ¶ 33.) The OEC apparently requests this information so that it can better identify the vehicles in question and resolve any confusion over the exact emergency calls to which they were responding. (*Id.*) Farrar claims that OEC personnel should be trained to "work around" an inability to provide this information in the interests of preserving her right to procedural due process. (*Id.*)

Currently before the Court are Defendants' motions to dismiss and to impose sanctions.

## LEGAL STANDARDS

A motion to dismiss shall not be granted unless the court, taking all well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, finds no cause of action for which relief may be granted. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir. 1998). "A complaint or part of a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Sanctions under 28 U.S.C. § 1927 are appropriate when a lawyer, or anyone else admitted to practice in a court, multiplies proceedings with bad intent, or "when objectively unreasonable litigation-multiplying conduct continues despite a warning to desist." *Alexander v. United States*, 121 F.2d 312, 315-16 (7th Cir. 1997).

## ANALYSIS

In addition to several state claims (Counts X – XII), Farrar asserts federal claims under 42 U.S.C. §§ 1983 (Counts I, II, V, VI, VII and IX), 1985 (Counts III and VIII) and 1986 (Count

IV), alleging that the destruction of the five emergency audiotapes violated her First, Fourth and Fourteenth Amendment rights, and that some or all Defendants conspired to prevent the exercise of her constitutional rights.

## I. Farrar's 42 U.S.C. § 1983 Claims: Counts I, II, V, VI, VII, and IX

In order to prevail on a §1983 claim, a plaintiff must show that "(1) [she] held a constitutionally protected right; (2) [she was] deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of law." *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988).

### A. First Amendment Claims: Counts VI, VII, and IX

First, Farrar alleges that Defendants' failure to preserve the emergency tapes she requested in effect blocked her access to the courts, violating her First Amendment rights. State actors are prohibited under the First Amendment from impeding a party's access to the courts. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). For Farrar to state her claim, she must allege that "state action hindered . . . her efforts to pursue a nonfrivolous[2] legal claim and that consequently [she] suffered some actual concrete injury." *Id.* Inconvenience or delay are not sufficient to establish a constitutional injury; in order to demonstrate that Defendants' actions

---

[2] Aside from the question of access itself, discussed below, we question whether Farrar's claims in *Farrar I* are frivolous—that is baseless or made without a reasonable and competent inquiry. *Berwick Grain Co., Inc. v. Ill. Dept. of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000) (discussing frivolous claims in context of motion for sanctions under Fed. R. Civ. P. 11(b)(2)). In *Farrar I*, Farrar alleged that the City and various unnamed defendants kept her under constant electronic surveillance as a result of her prior litigation against the City. She claimed that the defendants signaled her that she was being watched through the use of emergency sirens, horns, and low-flying planes, perfectly timed to coincide with her actions. *Farrar v. City of Chi.*, No. 00 C 1675, 2001 WL 184979, at *1-2 (N.D. Ill. Feb. 22, 2001). While neither the district court nor the appellate court in *Farrar I* reached the issue of whether these claims were frivolous, the number and the nature of the vague and conclusory allegations against the named defendants in this case, coupled with the history of *Farrar I*, beg the question.

rose to the level of a constitutional violation, Farrar must allege that she was prevented from pursuing her claims in court or that the value of her claims was significantly reduced as a result of Defendants' conduct. *See Vazquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1999).

While this Court sympathizes with the difficulties of a *pro se* plaintiff navigating a city bureaucracy in order to secure evidence, the obstacles Farrar faced are not sufficient to constitute a violation of her First Amendment rights. Neither the policies of the OEC concerning requests for emergency tapes nor the failure of individual Defendants to preserve the tapes blocked Farrar's access to the courts. Farrar was not prevented from bringing her claims in *Farrar I*, which survived a defense motion to dismiss. *See Farrar v. City of Chi.*, No. 00 C 1675, 2001 WL 184979, at *3-4 (N.D. Ill. Feb. 22, 2001). During pre-trial proceedings in *Farrar I*, Farrar had full, court-backed powers of discovery with which to pursue her claims, which she appears to have fully utilized while simultaneously stymieing the City's own discovery requests. Because Farrar has not sufficiently alleged that the defendants hindered her claims in *Farrar I* and that she actually suffered injury as a result, we dismiss her § 1983 claims based on alleged violations of her First Amendment rights.

### B. Fourteenth Amendment Claims: Counts VI, VII and IX

Farrar asserts Fourteenth Amendment violations in several counts of her complaint, including various claims that the failure of individual Defendants to preserve the five requested emergency call tapes violated her rights to due process (Counts VI, VII and IX) and equal protection (Count V). We address each in turn below.

Many of Farrar's allegations in Counts VI, VII and IX concern the general conduct of different Defendants during discovery in *Farrar I* and presumably the period immediately preceding the filing of *Farrar I* as well. Construing her claims liberally, Farrar appears to argue

that she had a property interest in the tapes themselves, or that she had a liberty interest in the preservation of the tapes for use in *Farrar I*, and that therefore destruction of the tapes without authorization after she had acted to preserve them amounted to a violation of her right to due process.

In order to establish a due process violation, a plaintiff must allege the existence of a property interest, deprivation of that interest, and a denial of due process. *Licari v. City of Chi.*, 298 F.3d 664, 668 (7th Cir. 2002); *Schroeder v. City of Chi.*, 927 F.2d 957, 959 (7th Cir. 1991). Farrar has cited no authority for her claim that she had any interest in the emergency tapes. "Although courts look to procedural guarantees granted by contract, ordinance, statute or regulation in assessing whether a property interest exists, the right to these procedural guarantees is not itself a property right." *Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir. 1988). Even if we were to accord the OEC's policy the weight of a municipal ordinance, the policy itself would not create an interest in support of Farrar's due process claim. Because Farrar fails to allege an interest in the emergency tapes, her § 1983 due process claims are dismissed with prejudice.[3]

Additionally, Farrar alleges that the defendants violated her equal protection rights under the Fourteenth Amendment by discriminating against her on the basis of her race, gender, and status as a *pro se* plaintiff. She later reformulates this claim in her response to Defendants' motion to dismiss under a "class of one" theory. Using either approach, Farrar fails to demonstrate discriminatory purpose or treatment by the defendants.

In order to successfully state an equal protection claim, Farrar must allege, *inter alia*, that Defendants acted with discriminatory purpose to treat her differently than other groups of

---

[3] Even if we also construed Farrar's Fourteenth Amendment claim as alleging a liberty interest premised on her First Amendment right of access to the courts, her claim still fails because Farrar cannot allege that her right of access to the courts was violated. *See supra* § I.A.

similarly situated individuals. *Chavez v. Ill. State Police*, 251 F.3d 612, 645 (7th Cir. 2001). "Discriminatory purpose . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of its adverse effects upon an identifiable group." *Id.* The Supreme Court has also recognized a "class of one" equal protection claim where the plaintiff "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Other than stating that she was subject to even "greater intentional hampering" than attorneys requesting production of City-controlled evidence, Farrar fails to allege any facts indicating that she was treated differently than any other similarly situated plaintiff, or than any other individual requesting information from the City. (R. 21, Compl. ¶ 113.) She herself claims that she is aware of attorneys who have suffered difficulties in obtaining evidence from the City. *Id.* Her allegations amount to little more than a legal conclusion; because the City was not able to produce the tapes, and because she had successfully brought suit against the City in the past, Defendants must have been acting with discriminatory purpose.

Farrar might suspect that, given her prior history with the City, she would be subject to discriminatory treatment in her future dealings with the City. However, in addition to the dearth of allegations concerning disparate treatment and discriminatory purpose, Farrar fails to allege in her complaint that any of the defendants involved in her efforts to preserve the five emergency audiotapes (presumably Stelnicki and unnamed members of the OEC) were even aware that she was a black female, that she was about to bring a *pro se* suit against the City or that she had ever litigated successfully against the City in the past. Farrar's complaint is not sufficient to support

an allegation of discriminatory purpose or disparate treatment, and her equal protection claims are dismissed with prejudice.

### C. *Monell* Claim: Count I

We turn next to Farrar's *Monell* claim against the City. *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The crux of her claim appears to be that the OEC's thirty-day retention policy was specifically designed by unnamed City policymakers to frustrate the lawsuits of potential plaintiffs against the City, and therefore constitutes a violation of her right to procedural due process and access to the courts. (R. 29, Compl. ¶¶ 26, 29.)

The policy or custom of a city department by itself is insufficient to trigger city liability under § 1983 unless the "municipality . . . is the moving force behind the injury because some policymaker made a deliberate choice to act or not act in a certain way." *Latuszkin v. City of Chi.*, 250 F.3d 502, 505 (7th Cir. 2001). In *Latuszkin*, the Seventh Circuit upheld the dismissal of a § 1983 complaint against the City based on policies and customs of the CPD, noting that "the complaint does not allege any facts tending to show that City policymakers were aware of the behavior of the officers, or that . . . City policymakers should have known about the behavior . . . . Without a link between the City and the alleged policy, no claim for municipal liability can survive." *Id.* City policymakers are generally described as those with legislative power; the focus is on "the authority to adopt rules for the conduct of government." *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1991). As in *Latuszkin*, Farrar has not alleged sufficient facts showing that City policymakers had any input in the OEC tape retention policy, or even that they were aware of and tacitly endorsed the policy. In the absence of these allegations, her § 1983 claim

against the City for violations of her right to procedural due process is insufficient and therefore is dismissed.[4]

### D. Fourth Amendment Claims: Counts I, VI, and VII

Farrar also alleges in Counts I, VI and VII of her complaint that her Fourth Amendment rights were violated as a result of the destruction of the requested emergency call tapes. Other than simply stating this legal conclusion, however, she offers nothing in support of this claim. While this Court makes every effort to draw any reasonable inferences in support of Farrar's claims, we simply cannot find any allegation in the complaint supporting a claim for unlawful search and seizure. Accordingly, Farrar's § 1983 claims based on alleged violations of her Fourth Amendment rights are dismissed with prejudice.

## II. Farrar's 42 U.S.C. § 1985 and §1986 Claims: Counts III, IV and VIII

In order to establish a claim under 42 U.S.C. § 1985, a plaintiff must allege the existence of a conspiracy; a purpose of depriving the plaintiff or a class of individuals of equal protection under the laws; an act in furtherance of the conspiracy; and injury to the plaintiff or deprivation of a constitutional right or privilege. *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000). "Bare allegations" are insufficient to demonstrate a conspiracy between defendants to deny an individual her constitutional rights. *Spiegel v. Cortese*, 196 F.3d 717, 726-27 (7th Cir. 1999). A "conspiracy claim cannot survive dismissal if allegations are vague, conclusionary [sic]

---

[4] We note that Farrar also appears to assert a procedural due process claim against the OEC challenging the department's training policies, specifically with regard to the apparent inability or unwillingness of OEC personnel to "work around" situations where an individual inquiring about emergency vehicle personnel is unable to supply certain identifying information to assist in the inquiry. Absent any sort of reasonable alternative, the Court cannot characterize any confusion resulting from the lack of this information as a due process violation. To do otherwise would seem to require the City to track the exact route each emergency vehicle takes to each destination it is serving, every time it responds to an emergency. While this may be suitable for regulation by a state statute or municipal ordinance, it is not a matter requiring constitutional protection.

and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Id.* (internal quotations omitted).

Farrar fails to allege any direct action in furtherance of a conspiracy by any of the parties. Similar to her equal protection claim, her allegation appears to be that, because the destruction of these five tapes occurred and she has yet to discover when or why it occurred, there must be a conspiracy between some or all of the named and unnamed Defendants. (R. 29, Compl. ¶¶ 100-103.) She does not allege that any of the defendants actually took steps to destroy the tapes, or that any defendant instructed another to do so. Without these allegations, the Court concludes that Farrar's allegations of a conspiracy are too vague and conclusory to survive dismissal.[5]

Furthermore, a 42 U.S.C. § 1986 claim is derivative of a § 1985 claim; absent a valid claim under § 1985, the § 1986 claim also must be dismissed. *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985). Accordingly, we dismiss Farrar's § 1985 and § 1986 claims with prejudice.

### III. Farrar's State Law Claims

In addition to her constitutional claims, Farrar alleges state law tort claims against Defendants, including intentional spoliation of evidence (Counts X and XI) and intentional infliction of emotional distress (Count XII). Because these claims involve the same set of facts as Farrar's federal claims and involve no difficult issues of state law, we exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a), and address each in turn below. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993).

---

[5] In addition, Farrar attempts to plead a conspiracy under 42 U.S.C. § 1983 in Count II of her complaint with allegations virtually identical to those in Counts III, IV and VIII. We simply note in dismissing Count II that 42 U.S.C. § 1983 does not provide a remedy for conspiracy to deprive a plaintiff of her civil rights; Farrar appropriately brought these claims under § 1985, which is discussed above.

### A. Intentional Spoliation of Evidence: Counts X and XI

Farrar alleges that Defendants' failure to preserve the emergency tapes she requested constitutes intentional spoliation of evidence. The Illinois Supreme Court, however, has not recognized a cause of action in Illinois for intentional spoliation of evidence; a cause of action exists only for negligent spoliation of evidence. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 273 (Ill. 1995). Even if we construe Farrar's claim under a negligence theory, Farrar's claim nevertheless would fail because of her inability to allege causation.

A spoliation of evidence claim arises when a defendant has a duty to preserve evidence, breaches that duty, and damages to the plaintiff are proximately caused as a result of the breach. *Id.* at 270. To sufficiently allege causation in a spoliation claim, a plaintiff must allege that but for the destruction or loss of the evidence by the defendant, the plaintiff had a "reasonable probability of succeeding in the underlying suit." *Id.* at 271, n.2. "If the plaintiff could not prevail in the underlying action even with the lost or destroyed evidence, then the defendant's conduct is not the cause of the loss of the lawsuit." *Id.*

Not only has Farrar failed to allege that the defendants' actions caused an inability to prove her allegations in *Farrar I*, but to do so would be inaccurate. As noted above, *Farrar I* was dismissed as a result of Farrar's failure to comply with discovery requests; the greatest obstacle Farrar faced in proving her claims was her own behavior.[6] *Farrar*, 2003 WL 1796007,

---

[6] As noted in *Boyd*, the reasonable probability of success requirement "prevents a plaintiff from recovering where it can be shown that the underlying action was meritless." 652 N.E.2d at 271, n.2. While we do not equate Farrar's refusal to participate in discovery with the actual merits of her suit in *Farrar I*, the same logic applies. When a plaintiff does not prevail in an underlying suit for reasons unrelated to the destruction of evidence, there is no reason to provide her with a spoliation remedy absent damages resulting from the spoliation. Indeed, given the fact that the procedural decisions precipitating the failure of her suit were completely within Farrar's control, one could argue that there is even less of a reason to provide a remedy under the present circumstances than in a situation where a suit fails for want of legal or factual substance, as

at *1-2. Farrar does not allege that if she had had these five emergency tapes, *Farrar I* would have been resolved differently; accordingly, Farrar's claim for spoliation of evidence is dismissed with prejudice.

## B. Intentional Infliction of Emotional Distress: Count XII

Farrar alleges in her last count that the defendants' actions in "intentionally hampering and impeding plaintiff from what she was lead to believe was hers for her case and otherwise causing her prejudice" constituted intentional infliction of emotional distress. (R. 21, Compl. ¶ 160.) Again, we begin by noting that our analysis is limited to the destruction of the five emergency tapes requested prior to discovery proceedings in *Farrar I*. In order to establish a cause of action for intentional infliction of emotional distress, Farrar must allege that: (1) the conduct involved was truly extreme and outrageous; (2) the defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would result in severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

Farrar's allegations against the defendants do not sufficiently assert that they undertook any action with the intent to inflict severe emotional distress. She simply claims that the destruction of the tapes itself demonstrates intent "because the city had been sanctioned before for destroying evidence without authorization." (R. 21, Compl. ¶ 161.) Presumably, in the style of her earlier arguments, her claim is that since the City previously had been sanctioned for destroying evidence, the only reason evidence would not be available was because Defendants took positive steps to destroy it to frustrate Farrar, and that Defendants would be moved to do so

---

described in *Boyd*. In any event, because Farrar has made no assertion that the dismissal of her claims in *Farrar I* was proximately caused by the defendants' actions, the issue is academic.

- 12 -

only to cause Farrar emotional harm. Even according Farrar's complaint this liberal construction, her allegations of Defendants' conduct and intent are insufficient to state a claim of intentional infliction of emotional distress. Specifically, Farrar fails to sufficiently allege that defendants engaged in extreme and outrageous conduct with the intent or knowledge that their actions would result in Farrar's emotional distress. Accordingly, we dismiss her claim with prejudice.

## IV. Defendants' Motion for Sanctions

Defendants move for sanctions against Farrar under 28 U.S.C. § 1927 based on her repeated requests to amend her complaint and her motion for sanctions against Defendants. 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.") As the Seventh Circuit has recognized, the circuits are split over whether § 1927 sanctions may be imposed on a *pro se* litigant. *Alexander*, 121 F.2d at 316. In *Alexander,* the court chose not to rule on this issue, instead reaffirming the "inherent powers" of the courts to "protect themselves from vexatious litigation" as an alternative authority for sanctions against *pro se* litigants. *Id.* Recently, a court in the Northern District of Illinois adopted the Second Circuit's position that § 1927 sanctions were not applicable to *pro se* plaintiffs litigating in good faith, holding that "it appears unlikely that Congress intended the phrase 'other person' to include a person lacking lawyer-like credentials." *Kim v. Earthgrains Co.*, No. 01 C 3895, 2003 WL 41643, at *1 (N.D. Ill. Jan. 3, 2003).

Farrar's multiple motions to amend her complaint indicate her desire to secure the full extent of her legal rights. In addition, neither her motions to amend nor her motion for sanctions

conclusively indicates that she was acting in bad faith.[7] Because we find that Farrar's actions were not taken with bad intent and did not rise to the level of "objectively unreasonable" conduct as described in *Alexander*, the Court denies Defendants' motion for sanctions. *Alexander*, 121 F.2d at 316.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss on all counts is granted. (R. 26-1.) Defendants' motion for sanctions is denied. (R. 32-1.) Because Farrar has failed on her third attempt to state a claim against these Defendants for which relief may be granted, her claims are dismissed with prejudice. The Clerk of the Court is instructed to enter a final judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Defendants on all counts.

ENTERED: /s/ Ruben Castillo
Judge Ruben Castillo
United States District Court

Dated: April 14, 2003

---

[7] We note, however, that Farrar inappropriately attached to an earlier motion in this suit a copy of a confidential response to an Attorney Registration and Disciplinary Commission (ARDC) investigation she initiated against Defendant Stelnicki. Defendants assert in their motion for sanctions that, since Defendants informed her previously that this action constituted a violation of the Illinois Supreme Court rules governing attorney discipline in Illinois, this conduct should be sanctioned. (R. 32, Defs.' Mot. for Sanctions ¶ 5.) While we agree with Defendants that Farrar's use of ARDC documents amounts to an abuse of the attorney discipline system, we give her the benefit of the doubt in consideration of her status as a *pro se* litigant and will not impose sanctions in this case.